HOLCOMBE H. HENDERSON, Plaintiff, *v.* PARK CENTRAL MOTORS SERVICE, INC., Defendant.

Supreme Court, New York County, July 11, 1930.

*Engelhard, Pollak, Pitcher & Stern* [*Frederic Pitcher* of counsel], for the plaintiff.

*Frederick T. Case,* for the defendant.

CRATER, J. Plaintiff brought this action to recover damages for the destruction of his car by thieves, who had stolen it from defendant's garage. The car was a Packard sport roadster, equipped with a special Rollston body and other accessories. It was purchased from the Packard Motor Car Company by the plaintiff on July 2, 1927, at the cost of $6,994.50. Additional accessories and chromium plating the nickel parts at later dates increased the cost to $7,824.50. This was exclusive of the cost of repairs after a collision, other minor repairs and additional accessories made or obtained during the five months following the purchase. The car was stored with defendant on November 21, 1927, under a contract for " full service " at $45 per month. " Full service " required that the car be stored in the garage, delivered to the plaintiff whenever requested, and returned to the garage. On the night of November 27, 1927, one Hayes came to the garage with two men. Hayes, then out of work, had been chauffeur for an owner of a car formerly stored with defendant. The night superintendent gave Hayes and his companions permission to remain in the chauffeurs' room on the second floor. The three men appear to have played cards until after midnight. Around one

o'clock in the morning these companions of Hayes stole plaintiff's car while it was on the ground floor. The night clerk was the only employee of defendant on duty, and he was also responsible for operating an elevator which ran through the eight floors of the building. He heard an engine racing as he was descending in the elevator, reached the ground floor in time to make an attempt to stop the thieves from driving plaintiff's car away, but was unable to do so, because the front doors of the garage were open. Shortly thereafter the car was wrecked in collision with an elevated pillar as the thieves sought to escape from a motorcycle officer. One of them had a prison record, and both had been strangers to the night superintendent when Hayes introduced them. Plaintiff has sustained the burden imposed upon him by proving the negligence of the defendant. (*Galowitz* v. *Magner*, 208 App. Div. 6.) He has established the fact that there was an open door at night on the ground floor with no one available to guard it, and the defendant's permissive entry to two strangers who had no business upon the premises and who were evidently using the chauffeurs' room of the garage for purely social purposes. These circumstances clearly evidence defendant's lack of due care and outweigh the evidence introduced by it that no previous theft had taken place under its method of storing customers' cars. (*Munger Automobile Co.* v. *American Lloyds of Dallas*, [Tex. Civ. App.] 267 S. W. 304.) The wrecking of the car through the intervention of driving at excessive speed and the attempt to escape a police officer, while unlawful acts, do not break the effect of the causative force which the negligence of the defendant set in motion. (*Wilson* v. *Wyckoff, Church & Partridge*, 133 App. Div. 92; affd., 200 N. Y. 561; Beale, The Proximate Consequences of an Act, 33 Harvard Law Review, 633, 657.)

The Northern Insurance Company paid plaintiff $4,700 for damage to the car, and subsequently sold the wreck to a repairman for $1,000. The question arises if plaintiff can maintain this action as the real party in interest within section 210 of the Civil Practice Act. He may if the insurance company did not indemnify him in full for the damages incurred. The insured, so long as he has not received full indemnity, still retains a beneficial interest in the claim and is still the legal owner of the whole cause of action. He is, therefore, the real party in interest, and the only person who can maintain the action against the wrongdoer for the full amount of the loss. (*Henderson* v. *Park Central Motors Service*, 225 App. Div. 788.)

Expert evidence offered by defendant is persuasive of the fact that plaintiff's car before the wreck would have brought no more than $3,500 through sale to a used car dealer. Plaintiff offers no evi-

dence to the contrary. Instead, he relies upon the rule which permits a chattel acquired for personal use to be appraised at its real value to the owner. In my opinion this rule is applicable, for the price plaintiff would have received for a sale on the market would not have represented his actual money loss. Damages for the loss of articles owned not for " purposes of sale " but for " the comfort and well-being of their owner " (*McAnarney* v. *Newark Fire Ins. Co.*, 247 N. Y. 176, at p. 185), or which are not " marketable " and have no market value, or at least no market value " which is fairly indicative of their real value to their owner and of his loss by being deprived of them " (*Lake* v. *Dye*, 232 N. Y. 209, at p. 214), are measured, " not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation." (*McAnarney* v. *Newark Fire Ins. Co.*, *supra*.) In *McAnarney* v. *Newark Fire Ins.. Co.* (*supra*) the Court of Appeals said (at p. 185): " The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. In the instance of the former it judges their value by the market price. In the instance of the latter it measures their loss not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation. The latter measure is employed in the case of household furniture, family records, wearing apparel, personal effects and family portraits. (*Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198; *Green* v. *Boston & Lowell R. R. Co.*, 128 Mass. 221; *Lake* v. *Dye*, 232 N. Y. 209, at p. 214.) " In *Lake* v. *Dye* (*supra*) the Court of Appeals said (at p. 214): " Wearing apparel in use and household goods and effects owned and kept for personal use, are articles which cannot in any fair sense be said to be marketable, and have a market value, or *at least a market value which is fairly indicative of their real value to their owner, and of his loss by being deprived of them*. Where such articles have been converted, the amount of the recovery ought not to be restricted to the price which could be realized by a sale in the market. *The owner should be allowed to recover the value to him based on his actual money loss*, all the circumstances and conditions considered, resulting from his being deprived of the property, not including, however, any sentimental or fanciful value he may for any reason place upon it. (*Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198; *Green* v. *Boston & Lowell R. R. Co.*, 128 Mass. 221; Sedgwick on Damages [9th ed.], p. 504, vol. 1, §§ 250, 251; Sutherland on Damages [4th ed.], vol. 1, §§ 1109–1117.) " The measure of plaintiff's damage for the destruction of his automobile cannot, therefore, be its market value as a used or second-hand car, since its market value as a second-

hand car would not at all represent the value of its use to the plaintiff. (*McAnarney* v. *Newark Fire Ins. Co., supra.*)

The cost of the car when new and perfect is some evidence of value. (*Hawver* v. *Bell,* 141 N. Y. 140, 143.) Its value at the time of destruction, of course, must take into account the fact that the machine was no longer what is known as a new car, after its purchase and use on July 2, 1927, and the fact that it could not be deemed a perfect machine (*Hawver* v. *Bell, supra*) after the collision of July 14, 1927, regardless of the testimony that the repairs thereon left its original value unimpaired. Furthermore, the 5,000-mile registration and the frequent repairs made thereon prior to November 27, 1927, indicate a considerable use. Applying the rule of damage that the plaintiff is entitled to the reasonable value of the repairs made necessary by the injury to the evidence appearing in this case, it would appear that the reasonable cost of repairing plaintiff's car to a condition similar to that obtaining prior to the casualty would have been $6,000. That evidence is convincing and is accepted by the court as the correct cost of repair. Viewed, however, from the standpoint of differentiation in value before and after the injury, the depreciation, which I find to have occurred amounting to $1,000, less the value of the wreck, concededly an equal amount, would indicate plaintiff's damage at substantially the same figure of $6,000.

Judgment for plaintiff is ordered in the sum of $6,000, with interest thereon from the 28th day of November, 1927, together with the costs and disbursements of this action.